(Decided 22nd May, 1884.)

---

JOHN W. HIGNUTT, Assignee of JAMES E. HIGNUTT *vs.* THOMAS F. GAREY.

*Claim against the Estate of an Insolvent—Statute of Limitations—Numerous audits.*

A claim against the estate of an insolvent, if not barred by the Statute of Limitations at the time of filing it with the auditor, is not afterwards affected by lapse of time.

The making of numerous audits in the distribution of an insolvent's estate, condemned.

APPEAL from the Circuit Court for Caroline County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, IRVING, and RITCHIE, J., for the appellant, and submitted for the appellee.

*Frank. H. Stockett,* for the appellant.

*J. W. Bryant,* for the appellee.

IRVING, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Caroline County, ratifying an auditor's report in the insolvent estate of James Hignutt, allowing a claim of the appellee. The same claim was the subject of controversy and adjudication in this Court on the appeal of the present appellee in 32*nd Maryland, page* 552. In that case, the insolvent debtor was the exceptant, and his assignee, James E. Hignutt, the assignor of the present appellant, was his counsel. In that case, the right of this appellee to have one-half of the judgment against the debtor, James Hignutt, the insolvent, paid from the insolvent's estate, was directly determined in favor of this appellee; and the contrary decision of the Circuit Court was reversed, and a new audit ordered, in which the allowance should be made in accordance with the view of this Court. To an auditor's report made in pursuance of the directions and opinion of this Court, in that case, exceptions were filed by this appellant, claiming to be a creditor of the insolvent, (James Hignutt,) and alleging, in substance, the following reasons against the allowance of the appellee's claim: 1, because the judgment stood to the use of Matthew Garey; 2, because the same was not proved according to law; and 3, because it was barred by the Statute of Limitations.

The Circuit Court overruled the exceptions and ratified the audit, putting the decision on the ground, that the

validity of the appellee's claim against the insolvent's estate had been established by this Court on the former appeal. On this appeal it is insisted that because the parties are not the same as on the former appeal, that decision was not conclusive. As against the insolvent debtor, who excepted, it is conceded the decision is binding, but as against a creditor of his estate the contention is that it is not.

If this position was fortified with proof showing that the claim was false and fraudulent as against creditors, which proof was newly discovered, or was not before the Court on the former trial, and the exceptant, as a creditor, would be injured by its allowance, there would be good ground on which to rest this appeal, and ask, that the claim should be disallowed as against this appellant. Such, however, is not the fact. The *bona fides* of the claim is not assailed only in so far as it is by the first reason asserted to be *Matthew Garey's* and not *Thomas F. Garey's* judgment. This was distinctly settled on the former appeal, and no additional proof or light is given us on that question. The judgment was an existing judgment at the time of the application of the insolvent, and was filed with the auditor against his estate before the same was barred by the Statute; and, under the law as laid down in *Lehman's Case,* 32 *Md.,* 225, that objection to the allowance of the judgment was not tenable. The only remaining objection to the auditor's report, and the allowance of one-half of this judgment to the appellee, in pursuance, as the auditor says, of the direction of this Court, is, that the judgment is not proved according to law. Ordinarily, this would be a sufficient objection to the audit and justify its rejection. The practice of allowing claims in an auditor's report which have not been verified by the oath of the persons preferring the same, or who by law ought to prove them, or which have not been established by other testimony, cannot be counte-

nanced. But in this case there is some justification for the auditor in not requiring other proof, for he regarded the decision of this Court as settling the question of the validity of the judgment and amount due on it after regular contest over it. And we do not think this appellant has made a case to justify our rejection of the claim because of the lack of the proofs which ordinarily should accompany claims. The only reason for requiring such proofs is to make sure of its being a just and unpaid debt. The debtor himself was the appellant in the former case resisting the claim, and although it seems then not to have been verified before the auditor, no exception was taken on that account, but the claim was resisted on other grounds which were adjudged against the insolvent debtor, and the claim as against him established as legitimate and unpaid. The reason for the technical requirement of formal proofs for the purpose of safety is obviated by the decision in that case, wherein the assignor of the present appellant, though a creditor and attorney of the insolvent in the case, did not take exception to the judgment for want of proper proofs of it. Though not a technical party to the suit, he was assignee holding the fund to pay the claim, and was the acting counsel of the insolvent who was excepting, and appealed. He was therefore in a position to be affected with notice of the condition of the judgment allowed. As counsel for the debtor he knew whether it was really claimed to be paid or not. Strange enough the judgment, of which his part has been marked to the use of the appellant, was never filed till after this audit was made, (notwithstanding nearly sixteen years had passed since the trustee reported his sales;) and it was marked to the use of this appellant on the very day the exceptions to the auditor's report were filed. It looks as if that was done to enable the assignee of the insolvent to make further contest and keep the estate still longer open under the cover of another's name, which he could

not with propriety do in his own name.    But whether this
be really so or not, the appellant does not occupy a posi-
tion to justify such objection from him, or entitle it to be
sustained.    Surely he ought not to be heard to make this
objection, when his own claim, on which he claims to be
creditor, lacks the very evidence of genuineness, for the
want of which he attacks the appellee's claim.    Without
it, we have no sufficient evidence that the appellant is a
creditor, and entitled to object, and that the marking to
his use is not mere sham.    But conceding he is a *bona
fide* creditor, it does not appear that he will be injured by
the allowance of appellee's claim.    For aught that appears,
there is more than enough to pay both.    From the record
we may fairly suppose there is a large surplus for the
debtor.    The audit appealed from so indicates.    After all
these years the estate has been open, we may reasonably
conclude all *bona fide* claims have been filed and passed
upon.    If the appellant is in no jeopardy, he has no inte-
rest in making this contest, and ought not to be sustained
in making an unnecessary objection to a claim, already
established as righteous as against the debtor.    Another
fact deserves notice.  Appellant's judgment has been revived
against the insolvent debtor, long since his application for
discharge; and, as late as 1876, certain property of the
debtor, conveyed away by him in 1876, was released from the
judgment.    He would seem to have another source of pay-
ment, not open to appellee; and insolvent estates are dis-
tributed according to principles of equity.    We only notice
this circumstance as throwing some light upon the char-
acter of the appellant's position and contest.    All the evi-
dence in this case is taken from the former record on
James Hignutt's appeal; and the only new piece of testi-
mony offered is the agreement under seal of Ennalls
Hubbard, wherein he covenants to save James Hignutt
from loss by reason of the suretyship for Thomas Locke-
man, on whose note he had entered as surety at the solici-

tation of Hubbard, and on which note the judgment sought to be enforced was obtained. That paper only operated as an agreement between the sureties and could not, in any way, affect the plaintiff's rights as against the securities respectively. No sufficient reasons have been assigned to justify our reversing the order of the Circuit Court which has been appealed from.

The record shows this estate has been audited piece-meal. Eight audits have been made, and yet another remains to be made on account of appellant's claim, which has yet to be passed upon. No sufficient excuse appears for this practice, and we cannot forbear to express disapproval. The unnecessary multiplication of audits, increases the cost, produces delay, prevents full insight at once into the condition of an estate, and may seriously mislead. Delay in getting in the deferred payments may sometimes, in the interest of creditors, require more than one audit in order that the cash in hand may be distributed among those entitled, and interest may not be lost; but as far as practicable the equity rule in relation to audits should be applied in such case as this. This case has been eighteen years in Court and the same ought to be brought to a close on its remand without further delay.

*Affirmed and remanded.*

(Decided 22nd May, 1884.)